IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COACH, INC.; COACH SERVICES, INC., | Case No. 11-2315 SC |
| Plaintiffs, | ORDER VACATING PRIOR ORDER AND GRANTING APPLICATION |
| v. | FOR DEFAULT JUDGMENT |
| DIANA FASHION, an unknown business entity; DIANE DAO, an individual; and DOES 1-10, inclusive, | |
| Defendants. | |

## I. INTRODUCTION

Plaintiffs Coach, Incorporated ("Coach") and Coach Services, Incorporated ("Coach Services") (collectively, "Plaintiffs") seek entry of Default Judgment against Defendants Diana Fashion and Diane Dao (collectively, "Defendants"). ECF No. 14 ("Mot."). The Court previously denied Plaintiffs' application because there were defects in Plaintiffs' proof of service. ECF No. 18 ("Oct. 13, 2011 Order"). Plaintiffs subsequently submitted a corrected proof of service and a declaration from the process server, Robina Alves ("Alves"), showing that the Complaint and Summons were served on the proper defendants in accordance with Federal Rule of Civil Procedure 4. See ECF Nos. 20 ("Dao POS"), 23 ("Alves Decl.").

Having considered the papers submitted by Plaintiffs, the Court VACATES its October 13, 2011 Order and GRANTS Plaintiffs' motion for default judgment.

**II. BACKGROUND**

Coach Services is a wholly owned subsidiary of Coach, a Maryland corporation with its principal place of business in Jacksonville, Florida. ECF No. 1 ("Compl.") ¶ 5. Coach manufactures, markets, and sells fine leather and mixed material products, including handbags, wallets, and accessories. Id. ¶ 10. Coach owns the "COACH" trademark and various composite trademarks and assorted components (collectively, "Coach Marks"). Id. ¶ 11. Additionally, Coach owns various copyright registrations, including the Horse and Carriage Mark and the Op Art Mark. Id. ¶ 13.

Plaintiffs allege that counterfeit Coach branded products were sold by and purchased from Defendant Diana Fashion, an unknown business entity operating out of San Jose, California. Id. ¶¶ 6, 18. Plaintiffs further allege that Defendant Diane Dao is the owner of Diana Fashion and "is the active moving, and conscious force" behind Diana Fashion's infringing activities. Id. ¶ 21.

Plaintiffs filed this action on May 10, 2011 and personally served the Summons and Complaint on Diane Dao June 2, 2011. See Alves Decl. ¶ 3; Dao POS; ECF No. 7 ("Diana Fashion POS"). The Complaint asserts claims for: (1) trademark counterfeiting; (2) federal trademark infringement; (3) false designation of origin and false advertising; (4) federal trademark dilution; (5) trademark dilution in violation of the California Business and Professions

Code; (6) common law unfair competition; and (7) copyright infringement. Compl. ¶¶ 23-87. Plaintiffs seek injunctive relief, an award of Defendants' profits and all damages sustained by Plaintiffs as a result of Defendants' illicit acts, treble damages pursuant to 15 U.S.C. 1117(b), and interest, costs, and attorney's fees. Id. at 16-17.

After Defendants failed to answer or otherwise respond to the Complaint, the clerk of the court entered default on July 1, 2011. ECF No. 13 ("Entry of Default"). Plaintiffs now apply for default judgment.

**III. LEGAL STANDARD**

After entry of a default, the Court may enter a default judgment. Fed. R. Civ. P. 55(b)(2). Its decision whether to do so, while "discretionary," Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980), is guided by several factors. As a preliminary matter, the Court must "assess the adequacy of the service of process on the party against whom default judgment is requested." Bd. of Trs. of the N. Cal. Sheet Metal Workers v. Peters, No. 00-0395 VRW, 2000 U.S. Dist. LEXIS 19065, at *2 (N.D. Cal. Jan. 2, 2001). If the Court determines that service was sufficient, it should consider whether the following factors support the entry of default judgment: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the

strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977). Therefore, for the purposes of this Motion, the Court accepts as true the well-pleaded facts in the Complaint.

## IV. DISCUSSION

### A. Adequacy of Service

Federal Rule of Civil Procedure 4(e) provides that an individual may be served by "delivering a copy of the summons and of the complaint to the individual personally." Fed. R. Civ. P. 4(e)(2)(A). Federal Rule of Civil Procedure 4(h) provides that a corporation, partnership, or other unincorporated association may be served by "delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Here, the Complaint and Summons for Dao and Diana Fashion were personally served on Dao on June 2, 2011 at Diana Fashion, located at 2549 South King Road, San Jose. See Alves Decl. ¶ 3; Dao POS; Diana Fashion POS. During the service of process, Dao identified herself as the owner of Diana Fashion. Alves Decl. ¶ 3. The Court finds that service of process upon Defendants was adequate and complete by June 2, 2011.

///

**B. Default Judgment**

After entry of a default, a court may grant a motion for default judgment on the merits of the case. See Fed. R. Civ. P. 55. A default judgment may not be entered, however, against an infant or incompetent person unless represented in the action by a general guardian or other such representative who has appeared. See id. Furthermore, a default judgment may not be entered against an individual in military service until after the court appoints an attorney to represent the defendant. See 50 U.S.C. App. § 521. Neither Dao nor Diana Fashion are infants, incompetent persons, or persons in military service. Chan Decl. ¶ 7.[1] Accordingly, the Court may consider whether a default judgment may be entered against Defendants.

Here, the majority of the Eitel factors favor default judgment.

    1. Prejudice

Plaintiffs allege that Defendants' actions have caused them to suffer a loss of goodwill since consumers who purchased Defendants' counterfeit products believed them to be genuine Coach products and were disappointed by their inferior quality, design, and style. See Compl. ¶¶ 25, 39. Plaintiffs also allege they have suffered financial loss from the lost sales of genuine Coach products. See id. As Defendants have thus far ignored Plaintiffs' lawsuit, if the motion for default judgment were to be denied, then Coach would likely be left without a remedy. Thus, Plaintiffs would be prejudiced absent entry of default judgment.

---

[1] Cindy Chan ("Chan"), attorney for Plaintiffs, filed a declaration in support of the Motion. ECF No. 14-2 ("Chan Decl.").

### 2. Merits of Plaintiffs' Substantive Claims and Sufficiency of the Complaint

Taken together, the second and third <u>Eitel</u> factors essentially require that "a plaintiff state a claim on which [it] may recover." <u>Pepsico, Inc. v. Cal. Sec. Cans</u>, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002) (internal quotations omitted). Coach asserts claims for (1) trademark counterfeiting and infringement, 15 U.S.C. § 1114; (2) false designation of origin, <u>id.</u> § 1125(a); (3) trademark dilution, <u>id.</u> § 1125(c); and (4) related claims under state law. <u>See</u> Compl. Coach seeks to recover statutory damages in lieu of actual damages as relief. Mot. at 7. Accordingly, the Court examines the only one of Coach's claims for which statutory damages are available -- its claim for federal trademark counterfeiting and infringement. <u>See</u> 15 U.S.C. § 1117(c) (providing for statutory damages for trademark counterfeiting); <u>see also</u> <u>Chanel, Inc. v. Tshimanga</u>, No. C-07-3592, 2008 U.S. Dist. LEXIS 118783, *17 (N.D. Cal. July 15, 2008) (adopting same approach).

To prevail on its trademark infringement and counterfeiting claim, Coach must prove that, without its consent, Defendants used in commerce a reproduction or copy of Coach's registered trademark in connection with the sale or advertising of any goods or services, and that such use is likely to cause confusion, mistake, or deceive customers. 15 U.S.C. § 1114(1)(a); <u>Brookfield Commc'n v. West Coast Entm't</u>, 174 F.3d 1036, 1046-47 (9th Cir. 1999). Here, Plaintiffs have alleged each of these elements in the Complaint. <u>See</u> Compl. ¶¶ 32-41. Taking these well-pleaded allegations to be true, as the Court must, Plaintiffs have

6

adequately stated a claim on which they may recover.

### 3. Amount of Money at Stake

Pursuant to the fourth Eitel factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." Pepsico, 238 F. Supp. 2d at 1176. Here, Defendants have engaged in the sale and distribution of counterfeit goods bearing at least four of Plaintiffs' trademarks, and Defendants continue to sell counterfeit Coach merchandise. See Mot. at 8-9, Chan Decl. ¶ 3, Ex. 1. Given the likelihood that Defendants' conduct may cause confusion or mistake or otherwise deceive customers, and Defendants' failure to comply with the judicial process or to participate in any way in the present litigation, the imposition of a substantial monetary award is justified. The amount of money at stake is therefore proportionate to Defendants' conduct, especially in light of the fact that the size of the award is limited by what the Court considers just.

### 4. Possibility of Dispute Concerning Material Facts

The fifth Eitel factor considers the possibility of dispute as to any material facts in the case. Here, Plaintiffs filed a well-pleaded complaint alleging the facts necessary to establish their claims and provided evidence in the form of Chan's declaration. Defendants have not responded to any of the proceedings in this case, and thus no dispute has been raised regarding the material averments of the Complaint. The likelihood that any genuine issue may exist is, at best, remote. This factor therefore favors the entry of default judgment.

///

### 5. Whether Default Was Due to Excusable Neglect

Defendants have had over six months to respond to the Complaint and have not done so. There is no evidence in the record that Defendants' failure to appear and otherwise defend was the result of excusable neglect. Defendants' failure to appear after being personally served with the Complaint indicates that their failure to appear was willful.

### 6. Strong Policy Favoring Decision on the Merits

The final Eitel factor, underscoring the policy favoring decisions on the merits, does not save this action from default judgment. This policy is not dispositive and "Defendant's failure to answer Plaintiffs' Complaint makes a decision on the merits impractical, if not impossible." Pepsico, 238 F. Supp. 2d at 1177.

**C. Remedies**

A plaintiff is required to prove all damages sought in the complaint. See Televideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987). In addition, any relief sought may not be different in kind from, or exceed in amount, what is demanded in the complaint. See Fed. R. Civ. P. 54(c). If the facts necessary to determine damages are not contained in the complaint, or are legally insufficient, they will not be established by default. See Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992).

### 1. Statutory Damages

First, Plaintiffs seek to recover an award of $50,000 in statutory damages under 15 U.S.C. § 1117(c). Mot. at 6-9. Damages inquiries under Section 1117(c) look to both compensatory and

punitive considerations. See Sara Lee Corp. v. Bags of New York, Inc., 36 F. Supp. 2d 161, 165 (S.D.N.Y. 1999). Section 1117(c) provides, in relevant part:

> In a case involving the use of a counterfeit mark . . . in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect . . . to recover, instead of actual damages and profits . . . , an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of-- (1) not less than $ 1,000 or more than $ 200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or (2) if the court finds that the use of the counterfeit mark was willful, not more than $ 2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

15 U.S.C. § 117(c)(1)-(2). Statutory damages for trademark infringement are particularly appropriate in default cases such as this, where there is a lack of information regarding a defendant's sales and profits. See Sara Lee Corp., 36 F. Supp. 2d at 165.

The Lanham Act does not provide guidelines for courts to use in determining an appropriate award. See Louis Vuiton Malletier & Oakley, Inc. v. Veit, 211 F. Supp. 2d 567, 583 (E.D. Pa. 2002). Consequently, if a plaintiff elects statutory damages, a court has wide discretion in determining the amount of statutory damages to award. See Columbia Pictures Indus. Inc. v. Krypton Broad. of Birmingham, 259 F.3d 1186, 1194 (9th Cir. 2001). Some courts will consider estimates of actual damages in calculating statutory damages; however, "there is no necessary mathematical relationship between the size of [an award of statutory damages] and the extent

or profitability of the defendant's wrongful activities." <u>Sara Lee Corp.</u>, 36 F. Supp. 2d at 165 (internal quotations and citations omitted).

In the instant action, Plaintiffs request statutory damages of $50,000. Plaintiffs' request is based on their assertion that there are at least four trademarks infringed on the handbag purchased by Coach's investigator, the investigator's observation that there were about 15-20 infringing handbags on sale at Defendants' store, the assumption that there were far more counterfeit products sold than those that were at the store at the time of survey, and the fact that authentic Coach handbags that are similar in style to the infringing handbag typically retail for approximately $385. Mot. at 8-9, Chan Decl. ¶ 3, Ex. 1.

The Court finds that the statutory damages requested by Plaintiffs bear a plausible relationship to Defendants' infringing activities and the profits Defendants may have realized from those activities. Such damages will also serve to deter future infringement by Defendants or others. Further, a statutory damage award of $50,000 is in line with default judgments granted by other district courts in similar circumstances. See <u>Coach Servs. v. La Terre Fashion, Inc.</u>, CV 10-2129 PSG (JCx), 2011 U.S. Dist. LEXIS 126763, at *10-11 (C.D. Cal. Nov. 1, 2011) (granting an award of $45,000).

2. <u>Injunctive Relief</u>

In addition to damages, Coach requests a permanent injunction enjoining Defendants from using Coach trademarks in connection with the sale and offer for sale of infringing products. The Lanham Act

gives the court "power to grant injunctions, according to the rules of equity and upon such terms as the court may deem reasonable, to prevent the violation" of a trademark holder's rights. 15 U.S.C. § 1116(a). Permanent injunctions are routinely granted in cases like the instant one where a defendant has not appeared in the action at all. Philip Morris U.S.A., Inc. v. Castworld Prods., 219 F.R.D. 494, 502 (C.D. Cal. 2003); Pepsico, 238 F. Supp. 2d at 1178; Coach Servs., Inc. v. Cheap Sunglasses, No. 09 CV 1059 BEN (JMA), 2010 U.S. Dist. LEXIS 68200, at *6 (S.D. Cal. July 6, 2010). Accordingly, the Court grants Coach's request for a permanent injunction enjoining Defendants from using Coach trademarks in connection with the sale and offer for sale of infringing products.

    3. Costs

Coach also requests costs under 15 U.S.C. § 1117(a), which authorizes recovery of the costs of an action for the violation of any right of the registrant of a trademark. Coach is entitled to the costs of this action. See Lindy Pen Co. v. Bic Pen Corp., 982 F.2d 1400, 1405 (9th Cir. 1993). Coach may submit its Bill of Costs in accordance with Civil Local Rule 54-1.

**V. CONCLUSION**

The Court VACATES its October 13, 2011 Order (ECF No. 18) and GRANTS the Motion for Default Judgment filed by Plaintiffs Coach, Inc. and Coach Services, Inc. The Court enters JUDGMENT in favor of Plaintiffs and against Defendants Diana Fashion and Diane Dao in the amount of $50,000 plus Plaintiffs' costs. Defendants are PERMANENTLY ENJOINED from infringing any of Plaintiffs' trademarks.

11

Plaintiffs shall submit their Bill of Costs within fourteen (14) days of this Order as provided by Civil Local Rule 54-1. Failure to do so will result in a waiver of costs.

IT IS SO ORDERED, ADJUDGED, AND DECREED.

Dated: December 13, 2011 
UNITED STATES DISTRICT JUDGE